UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO. 8:20-cr-364-WFJ-AAS

DOUGLAS EDWARD BENNETT

## MEMORANDUM REGARDING FINE

This Court should impose a $100,000 fine for count one and waive the fine as to counts two and three. The fine range for this offense is from $20,000 to $200,000. USSG §5E1.2(c)(3).

Bennett has pleaded guilty to three offenses that include fines.  The Court must impose a fine unless the defendant can demonstrate that he is unable to pay. *See United States v. McGuinness*, 451 F.3d 1302, 1307 (11th Cir. 2006). The guideline range for the defendant's fine is $20,000 to $200,000. PSR ¶ 85; USSG §5E1.2(c)(3). The statutory maximum fine is $250,000. PSR ¶ 83; 18 U.S.C. § 3571(b).  The defendant cannot make a good faith showing that he is unable to pay a fine in light of his failure to cooperate with probation in fully disclosing his assets and financial condition.  The PSR noted that the financial releases were never returned by the defendant in order to review his employment and financial records.  PSR at ¶¶ 70, 71.  While the PSR identifies stocks and an IRA, the United States believes that the Defendant may have already liquidated those funds.

Although his cooperation was minimal, Bennett's known assets support ordering a fine within the applicable range.  Bennett owns a property without a mortgage.  The PSR identifies Bennett's residence, the real property located at 1624 Chateau Dr., Clearwater, Florida with an estimated value of $170,000; the value may be even higher in light of the current housing market.  It should be noted that the property is titled to "Gordon D. Ewen," which is Bennett.  Bennett used this alias for his driver's license, property records, voting records, and passports, including as part of the offenses for which is currently being sentenced.

The PSR recognizes that Bennett has the ability to pay a fine. PSR ¶ 72. Due to his lack of cooperation with U.S. Probation, it is difficult to ascertain his true net worth, but even considering only his real property, he has a net worth of at least $170,000 (and likely higher based on the property's value and no mortgage).

In determining whether to impose a fine and the amount of such fine, this Court shall consider, among other factors, the expected cost to the government of any term of probation or term of imprisonment and term of supervised release imposed.  USSG § 5E1.2(d)(7) and 18 U.S.C. § 3572(a)(6).  Bennett's guideline range of imprisonment is 57 to 71 months.  PSR ¶ 75.  The PSR estimates that the annual cost of Bennett's imprisonment is $44,128, or $3,688 per month.  PSR ¶ 86.  Based on this, if he was sentenced to the guideline term of imprisonment, the cost of imprisonment alone would range from $210,216 to $261,848.  Even if Bennett were only sentenced to two years imprisonment, the mandatory term for count two, the cost of his imprisonment would be $88,256.

Bennett is unmarried and has no minor children. PSR ¶¶ 49, 50. Thus, his payment of a fine would not unduly burden any dependents. *See* 18 U.S.C. § 3572(a)(2); USSG §5E1.2(d)(3).

Another consideration in determining the fine amount is the amount of restitution ordered. *See* 18 U.S.C. § 3572(a)(4). There will be no restitution in this case. PSR ¶¶ 87, 88. Priority would be given to compensating any victims prior to imposing a fine, however, there will be no restitution to reduce his available assets.

The fact that restitution will not be ordered does not detract from the seriousness of the offense. *See* USSG §5E1.2(d)(1). Bennett spent the last 45 years fully encompassing an identity that did not belong to him. He avoided being labeled a felon and a sex offender. He became a gun enthusiast and obtained multiple firearms. There is a reason that convicted felons and sex offenders are not permitted to possess dangerous weapons.

Concerningly, Bennett appears to be preventing the Court from discovering the full range of his assets. Based upon jail visitations at the Pinellas County Jail, there is serious doubt as to his honesty when it comes to his disclosure of assets. Bennett has plans to put his house up for sale as soon as possible and his granddaughters are facilitating the sale for him. It is known, based upon the initial financial disclosure and jail visits, that Bennett had some retirement accounts and a home without a mortgage. It appears that Bennett, through his family, has liquidated his Raymond James and Acheiva bank accounts.

3

On November 23, 2020, Bennett met with his daughter and oldest granddaughter. They discussed his use of a fraudulent name, and the difficulties it created in attempting to conduct necessary financial transactions while incarcerated. They discussed asset forfeiture and seizure laws and agreed to protect the investment, and the need to sign the deed to his residence over to another family member. On December 5, 2020, Bennett's sister and younger granddaughter visited him in jail and they discussed how to handle Bennett's checks, from a now liquidated account from Raymond James, which were issued under the name Gordon Ewen. They discussed the legality of endorsing and depositing of the checks in the name of Gordon Ewen and not Douglas Bennett. Bennett's sister and youngest granddaughter visited him in jail on December 12, 2020, and they also discussed banking information related to the Raymond James and Achieva accounts. He ended the discussion reading a letter ending with, "…Gordon Ewen, his earnings, his assets should be able to be passed on to family and even to some that may hold a little DNA of Douglas Bennett."

On October 16, 2021, Bennett's granddaughters visited him in jail.  They discussed his financial affairs by questioning law enforcement's seizure of his vehicle title and whether they would sell the vehicle. They discussed the home's tax bill and the plan to pay the bill quarterly, because they did not know when they would sell the house.

During a November 6, 2021, jail visit with his younger granddaughter Bennett talked about his concerns for the fines on this case. "…I wasn't trying to steal money.

I'm not trying to defraud anybody. Why should you put a fine on me of ten, fifteen, twenty thousand, hundred thousand dollars…"

A month later, on December 5, 2021, Bennett's granddaughter again visited with him and they discussed the real estate market and how quickly houses were selling for significantly more than the asking price. His granddaughter raised concerns about selling the home because it is "in the other name." Bennett asserted that the Power of Attorney he had signed for her had been accepted by the bank (Achieva).

Bennett spoke with his younger granddaughter by phone on February 1, 2022. He told her to contact her sister and, "work on being sure my house is empty, clean, and ready up for sale. And sell the damn thing. …my goal is to put it up on the market for two hundred thousand, I'll back down to a hundred eighty, but I don't really wanna back down below that." After the granddaughter mentioned that it was probably worth more, he agreed they should start at a higher price.

The defendant has the burden of proving his inability to pay the fine. *United States v. Gonzalez*, 541 F.3d 1250 (11th Cir. 2008). The Guidelines require an imposition of a fine in all cases, except where the defendant establishes that he is unable to pay and not likely to become able to pay. *Id.*

In light of the limited information obtained, and his attempts to move and obscure his assets, the United States believes that a fine of $100,000 is warranted and should be due upon entry of the judgment.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney


By:     */s/ Erin Claire Favorit*
        Erin Claire Favorit
        Assistant United States Attorney
        Florida Bar No. 0108567
        400 N. Tampa Street, Ste. 3200
        Tampa, FL 33602
        Phone:  (813) 274-6000
        Fax:    (813) 274-6103
        Email: erin.favorit@usdoj.gov

6

**U.S. v. Bennett**                    **Case No. 8:20-cr-364-WFJ-AAS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 3, 2022, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which

will send a notice of electronic filing to the following:

Mr. David Hardy, Esq.

*/s/ Erin Claire Favorit*
Erin Claire Favorit
Assistant United States Attorney
Florida Bar No. 104887
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602
Phone:  (813) 274-6000
Fax:    (813) 274-6103
Email: erin.favorit@usdoj.gov