UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

vs.                                                            Case No.  8:20-CR-364-T-WFJ-AAS

**DOUGLAS EDWARD BENNETT**
_____/

**SENTENCING MEMORANDUM[1]**

**I.     Legal Framework for Sentencing Analysis**

It is now well established that sentencing requires a two-step process.  First, the district court must correctly calculate the sentencing guideline range. Second, the district court must consider the factors outlined in 18 U.S.C. §3553(a) to determine a reasonable sentence as to each defendant in each case.

In United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005), the Eleventh Circuit enumerated the ten factors used to determine a reasonable sentence: (1) the nature and circumstances of the offense and the defendant's personal history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense,

---

[1] A version of this sentencing memorandum was originally filed *in camera* on February 2, 2022, along with a motion to seal that memorandum.  At Mr. Bennett's February 4, 2022, sentencing hearing, the District Court informed Defense Counsel that it had declined to grant the motion to seal, but that Counsel was free to re-file the sentencing memorandum in the public record with any redactions Counsel felt appropriate.  Counsel has done so.

to promote respect for the law and to provide a just punishment; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with appropriate educational training, vocational training, or medical care; (6) types of sentences available; (7) the correctly-calculated sentence range under the Sentencing Guidelines; (8) pertinent policy statements of the U.S. Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

## II. Analysis of 18 U.S.C. § 3553(a) Factors

### A. History And Characteristics Of The Defendant

Douglas Edward Bennett is 77 years old. He was born on July 18, 1944, in Buffalo, New York. Mr. Bennett's father Elmo was the manager of a plumbing retail store, and his mother Idnella was a homemaker.

When Mr. Bennett was around six or seven years old, his family relocated from Buffalo, New York to East Longmeadow, Massachusetts. In 1962, Mr. Bennett graduated from East Longmeadow High School. Soon thereafter he entered Adrian College in Michigan, to study to become a minister. However, after about 18 months of study, Mr. Bennett realized that the ministry was not his calling, and he returned to Massachusetts. In Massachusetts, Mr. Bennett worked at the plumbing store which his father managed, and he returned to his studies on a part time basis at the University of Massachusetts at Amherst, where he studied speech and theatre.

In 1966, while still working towards his bachelor's degree, Mr. Bennett was married. Mr. Bennett and his wife had a baby girl, and at first the family was happy. However, as the years passed Mr. Bennett's wife became critical of him, and in 1970 she left him for another man. Mr. Bennett and his wife divorced in 1971. Mr. Bennett's ex-wife did not want to raise their three-year-old daughter, so Mr. Bennett took sole custody of the child.

In his last year at the University of Massachusetts, Mount Holyoke College hired Mr. Bennett to teach technical theatre. For two years, Mr. Bennett taught students how to make scenery panels, hang rigging systems, set lighting, and repair costumes. When he was a boy, his father had taught him carpentry and electrical work, and he put these trades to good use as he taught at Mount Holyoke. In 1972 Mr. Bennett graduated from the University of Massachusetts in Amherst, with a bachelor's degree in speech and theater.

In 1974, Mr. Bennett was charged by the State of Connecticut with robbery, kidnapping, sexual contact, rape, and two counts of deviate sexual intercourse.[2] On January 3, 1975, a jury found Mr. Bennett guilty of those charges. Mr. Bennett appealed, and the Connecticut Supreme Court affirmed his convictions on May 11, 1976.

---

[2] State v. Bennett, 171 Conn. 47 (1976).

Rather than turn himself in to serve a prison sentence of nine to eighteen years, Mr. Bennett took on the identity Gordon Ewen, an individual who had died in 1945, and he fled. Mr. Bennett has always maintained his innocence with respect to the Connecticut case.

### B. The Correctly Calculated Sentence Range Under the Sentencing Guidelines

The PSR calculates Mr. Bennett's guideline term of imprisonment to be 57 to 71 months of imprisonment, with an additional 24-month term of imprisonment pursuant to 18 U.S.C. §1028A(a)(1).

However, it is Defense Counsel's position that the four-level increase that the PSR applies based upon USSG § 2K2.1(b)(6)(B) is not appliable to this case, and that Mr. Bennett's true guideline range is 37 to 46 months, with an additional 24-month term of imprisonment pursuant to 18 U.S.C. §1028A(a)(1).

Defense Counsel will make argument regarding this issue at sentencing.

### C. The Need to Provide the Defendant with Appropriate Medical Care

Over the last fourteen years, Mr. Bennett has faced serious health problems.

In 2008, doctors diagnosed Mr. Bennett with skin melanoma, which medical professionals removed by local excision.

In 2014, Mr. Bennett was again diagnosed with skin melanoma, but this time the cancer had metastasized to his brain, right buttock, right arm, left armpit, as well as other parts of this body. Surgeons at Moffit Cancer Center removed a section of Mr.

Bennett's skull and extracted melanoma cancer cells from the surface of his brain. Oncologists at Moffit attacked the melanoma located deeper in his brain with radiation treatments, and they treated Mr. Bennett with *Keytruda* to attack the cancer in the other parts of his body.

Subsequent to his brain surgery, Mr. Bennett began to suffer from seizures. A neurologist at Moffit Cancer Center informed Mr. Bennett that the removal of cells from his brain likely caused the seizures. Mr. Bennett presently takes *Keppra* to control his seizures.

In June of 2020, Moffit Cancer Center began to treat Mr. Bennett for prostate cancer. Further, Moffit treated him for thyroid level abnormalities which had arisen because of his cancer treatments.

After his arrest in this matter, Mr. Bennett continued to visit Moffit Cancer Center to get treatment for his thyroid. In May of 2021, the Pinellas County Jail Medical Office sent Mr. Bennett to the Florida Cancer Center to continue the treatment for his prostate cancer, and he restarted his radiation treatments in July of 2021. Those radiation treatments ended on August 4, 2021. In September 2021, a Florida Cancer Center doctor told Mr. Bennett that based on blood test results, his prostate was doing well, and that he would be rechecked every three months.

During his stay at the Pinellas County Jail, Mr. Bennet has lost 45 pounds.

### D. The Need to Protect the Public

Mr. Bennett is not a threat to commit additional crimes, and he is not a threat to the public.

From the time that Mr. Bennett fled from Connecticut authorities in 1976, to the day he was arrested outside his home in Clearwater on November 4, 2021, Mr. Bennett had no contact with law enforcement.

Further, recidivism rates decrease significantly with age.[3]  Mr. Bennett is 77 years old, and it's extremely unlikely that he would recidivate.

### III. Conclusion

The Defense respectfully requests this Honorable Court take all the forgoing factors into consideration.  Counsel moves the Court to impose a sentence of 24 months of imprisonment, as such a sentence is "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. § 3553(a).

---

[3] Sarah Rakes, *Recidivism Among Older Adults: Correlates of Prison Re-entry*, Justice Policy Journal, Spring 2018.

Respectfully submitted the 9th day of February 2022.

/s/ David C. Hardy
David C. Hardy, Attorney at Law
Board Certified Specialist in Criminal Trial Law
Florida Bar #689661
The Hardy Law Firm, P.A.
1710 N. 19TH Street, Suite 215
Tampa, FL  33605
Telephone: (813) 990-9547
Facsimile:  (813) 354-4617
Email: dch@thehardylawfirm.com

## Certificate of Service

I HEREBY CERTIFY that on the 9th day of February 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to AUSA Erin Claire Favorit, Office of the United States Attorney.

/s/ David C. Hardy
David C. Hardy, Attorney at Law
Board Certified Specialist in Criminal Trial Law
Florida Bar #689661
The Hardy Law Firm, P.A.
1710 N. 19TH Street, Suite 215
Tampa, FL  33605
Telephone: (813) 990-9547
Facsimile:  (813) 354-4617
Email: dch@thehardylawfirm.com